Timothy M. Frank (CA Bar No. 263245)
timothy.frank@hnbllc.com
HAGAN NOLL & BOYLE LLC
820 Gessner, Suite 940
Houston, Texas 77024
Tel: (713) 343-0478

Attorney for Plaintiffs DISH Network
L.L.C. and Sling TV L.L.C.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C. and SLING TV L.L.C.,<br><br>Plaintiffs,<br><br>v.<br><br>SCOTT FORBES and DISCOUNT WAREHOUSE LLC, d/b/a SuperBoxEliteTV,<br><br>Defendants. | Case No. 8:25-cv-1482<br><br>**PLAINTIFFS' COMPLAINT**<br><br>**Digital Millennium Copyright Act, 17 U.S.C. §§ 1201(a)(2), (b)(1) (Counts I-II)**<br><br>**Electronic Communications Privacy Act, 18 U.S.C. §§ 2511(1)(c)-(d) (Count III)** |

Plaintiffs DISH Network L.L.C. and Sling TV L.L.C. file this action against Defendants Scott Forbes and Discount Warehouse LLC, d/b/a SuperBoxEliteTV, for violations of the Digital Millennium Copyright Act and Electronic Communications Privacy Act based on Defendants providing illicit streaming services that capture and transmit Plaintiffs' copyrighted television programming by circumventing Plaintiffs' security measures. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## PARTIES

1.   Plaintiffs DISH Network L.L.C. ("DISH") and Sling TV L.L.C. ("Sling") are each organized under Colorado law and have their principal place of business in Englewood, Colorado.

2. Defendant Scott Forbes ("Forbes") resides in La Palma, California.

3. Defendant Discount Warehouse LLC ("Warehouse") is organized under California law, with its principal place of business at Forbes's residence in La Palma, California. Forbes serves as CEO and sole manager of Warehouse. On information and belief, Forbes authorized, directed, and participated in the infringing activities of Warehouse alleged herein.[1]

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs assert claims for violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 ("DMCA") and Electronic Communications Privacy Act, 18 U.S.C. §§ 2511, 2520 ("ECPA").

5. The Court has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) because they each reside in California and by the wrongful conduct identified herein purposefully directed their conduct at California, causing harm to Plaintiffs in California.

6. The Court is a proper venue under 28 U.S.C. § 1391 because Defendants each reside in this judicial district and a substantial part of the events that give rise to Plaintiffs' claims occurred in this judicial district.

## DEFENDANTS' ILLICIT STREAMING SERVICE

7. Plaintiffs provide television programming to several million authorized subscribers of their Sling TV and DISH Anywhere services by transmitting channels to them using the internet. Plaintiffs hold rights to transmit the channels pursuant to license agreements between DISH and programming providers. The programming aired on the channels is subject to copyright protections and Plaintiffs are authorized

---

[1] Forbes claims in a pending divorce case that his wife Tanyarat Forbes, with the assistance of his two former employees, "wrongfully took over my business and is currently earning an estimated $2 million or more each month." *Forbes v. Forbes*, No. 23D008764 (Cal. Super. Ct., Orange Cty.). Plaintiffs may amend the complaint to name these individuals as defendants if they are found to be involved in the infringing conduct alleged.

Plaintiffs' Complaint

by the programming providers to protect them. Plaintiffs' channels, whether intended for Sling TV or DISH Anywhere subscribers, are transmitted over the internet using the same Sling streaming platform ("Channels").

8. Plaintiffs use digital rights management ("DRM") technology to protect the Channels from unauthorized access and copying. The DRM technology uses key-based subscriber authentication and encryption-decryption processes that make the Channels accessible to authorized subscribers only and prevent unauthorized access to and copying of the Channels.

9. Forbes sells an illicit streaming service known as SuperBox ("Service"). Forbes provides the Service through his websites that include <superboxelitetv.com> and <superstreambox.com> in the form of a "plug-and-play" or "fully loaded" set-top box.[2] Forbes instructs his users to simply "[p]lug it in, connect to WiFi, and start streaming instantly" for "endless entertainment."[3]



10. Forbes provides the Service for a one-time cost of approximately $329 to $429, the price depending on the set-top box the user selects.[4] Forbes emphasizes

---

[2] https://superboxelitetv.com/; https://superboxelitetv.com/products/superbox-s5-max. The website URLs identified in this complaint were last visited on or after June 24, 2025.
[3] https://superboxelitetv.com/
[4] https://superboxelitetv.com/collections/all

3                                                                                          Plaintiffs' Complaint

that users will "[p]ay once and enjoy unlimited access with no monthly fees."[5] Forbes processes payments received from his sale of the Service and ships the set-top boxes through his company, defendant Warehouse.

11.   Forbes states that the Service offers more than 1,300 channels, including channels that are dedicated to sports, movies, and pay-per-view events.[6] Forbes touts that the Service provides "all your favorite content without any restrictions."[7] Forbes focuses on converting users from legitimate subscription-based services such as those provided by Plaintiffs, for example calling on users to compare the one-time cost of the Service "to traditional terrestrial, satellite, and cable television" and "[j]oin Team SuperBoxEliteTV and say goodbye to your cable provider."[8] In fact, Forbes claims to have started the business because he and his friends "were tired of paying for cable . . . and channels they never watched" and so now he "strive[s] to help customers all over the world save money and stream their favorite content quickly and easily."[9]

12.   Plaintiffs' Channels were transmitted without authorization to users of the Service. Identifiers unique to Plaintiffs' transmissions of the Channels were found when analyzing the corresponding channels on the Service, confirming that channels transmitted to Service users originated from Plaintiffs. Sling's slate that contains its distinctive logo, which appears for example on sports channels as a placeholder when an event is not being aired, was also located when analyzing channels on the Service, further showing that Plaintiffs' transmissions were used to seed the Service with this content. The following image shows an MLB channel transmitted on the Service that displayed Sling's slate, with Sling's distinguishing logo in the bottom right corner.

---

[5] https://superboxelitetv.com/
[6] https://superboxelitetv.com/pages/superbox-channel-list?; https://superboxelitetv.com/products/superbox-s5-max
[7] https://superboxelitetv.com/pages/superbox-wholesale-resale
[8] https://superboxelitetv.com/pages/about; https://superboxelitetv.com/pages/superbox-elite-2021-android-media-player?
[9] https://superboxelitetv.com/pages/about

Plaintiffs' Complaint

[Screenshot of Sling TV interface showing "1093 MLB 14 — Tampa Bay Rays vs Baltimore Orioles (06.19 7:35 PM ET)" with message "Consider this a seventh-inning stretch for TV... No live games are on at this time. Check the MLB schedule at mlb.com/schedule"]

13. Plaintiffs' Channels were transmitted on the Service by circumventing the DRM technology that Plaintiffs use to protect the Channels from unauthorized access and copying. On information and belief, the circumvention targeted at least the Widevine DRM technology. The Widevine DRM controls access to the Channels by requiring Plaintiffs' subscriber to present a valid digital authentication key and license request to Sling's Widevine DRM server to obtain the decryption key needed to unlock a specific Channel. The decryption key is provided to Plaintiffs' subscriber in an encrypted communication that upon receipt is not exposed to the subscriber but instead is secured within the content decryption module of the subscriber's Widevine supported device. The Widevine DRM also protects against copying of the Channels by requiring that the encrypted audio-visual segments that make up a given Channel are unlocked using the decryption key and complied to form the Channel within the confines of the content decryption module, such that Plaintiffs' subscriber can only view the Channel and not transmit the Channel.

14. The Widevine DRM and the protection against copying which it affords can be circumvented using a specially developed computer program that emulates the behavior of a reverse engineered hardware device. The computer program tricks Sling's Widevine DRM server to grant access and send a decryption key by making

Plaintiffs' Complaint

the server believe the request came from a legitimate Widevine supported device that would keep the decryption key secured (in reality the request came from a computer program mimicking the reverse engineered hardware device). The computer program then uses the decryption key to unlock the encrypted audio-visual segments that make up the Channel and compiles them to form an unencrypted Channel that can be copied and transmitted (as opposed to being merely viewed). The unencrypted Channel can be uploaded to a server outside of the Sling platform and transmitted to any number of users that can view the Channel without purchasing a subscription from Plaintiffs.

15. On information and belief, users of the Service can receive Plaintiffs' Channels because the Widevine DRM technology used to protect the Channels from unauthorized access and copying is being circumvented as outlined above. Additional content offered on the Service is believed to have been acquired from other legitimate pay-television providers that use the Widevine DRM, through this same process of circumvention, which enabled the Service to provide more than one thousand linear channels and an extensive library of on-demand programs for a small fraction of the cost charged by providers that pay to license their content such as Plaintiffs.

16. Defendants were notified that the Service infringes Plaintiffs' rights and were asked to cease and desist from providing the Service, but Defendants failed to comply and the Service continues to operate. Statements on <superboxelitetv.com> further show Defendants' knowledge that the Service provided unauthorized content, for example attempting to disclaim liability "for the content streamed," alleging to not "condone piracy," and telling users to confirm for themselves there are "copyright agreements in place" and they "are entitled to access th[e] content" on the Service.[10]

## CLAIMS FOR RELIEF

### COUNT I

### Violations of the DMCA, 17 U.S.C. § 1201(a)(2)

17. Plaintiffs repeat and reallege the allegations in paragraphs 1-16.

---

[10] https://superboxelitetv.com/pages/disclaimer

18. Plaintiffs' DRM technology effectively controls access to the Channels, which are comprised of works protected under Title 17, United States Code. Plaintiffs are authorized by the copyright owners to control access to the Channels and use the DRM technology with their consent.

19. Plaintiffs' DRM technology was circumvented to acquire access to the Channels that were transmitted to users of the Service. On information and belief, the circumvention was directed at Plaintiffs' Widevine DRM and constituted an essential component or part of the Service.

20. The Service, or at least the component or part that involved accessing Plaintiffs' Channels, was primarily designed and produced to circumvent Plaintiffs' DRM technology and had no commercially significant purpose or use other than to circumvent such DRM technology.

21. Defendants violated 17 U.S.C. § 1201(a)(2) by manufacturing, offering the public, providing, or otherwise trafficking in the Service. Each sale or provision of the Service constitutes a separate violation of 17 U.S.C. § 1201(a)(2).

22. Defendants' acts that violated 17 U.S.C. § 1201(a)(2) were performed without the authorization or consent of Plaintiffs or, on information and belief, any owner of the copyrighted works provided by Plaintiffs.

23. Defendants' violations of 17 U.S.C. § 1201(a)(2) were willful. Such violations damaged Plaintiffs in an amount to be proven at trial. Unless restrained and enjoined, Defendants will continue to violate 17 U.S.C. § 1201(a)(2).

## COUNT II

### Violations of the DMCA, 17 U.S.C. § 1201(b)(1)

24. Plaintiffs repeat and reallege the allegations in paragraphs 1-16.

25. Plaintiffs' DRM technology effectively prevents, restricts, or otherwise limits copying of the Channels, which are comprised of works protected under Title 17, United States Code. Plaintiffs are authorized by the copyright owners to control copying of the Channels, including distribution and public performance through acts

of transmission, and use DRM technology with their consent.

26. Plaintiffs' DRM technology provides protections against unauthorized copying that were circumvented to transmit the Channels to users of the Service. On information and belief, the circumvention was directed at Plaintiffs' Widevine DRM and constituted an essential component or part of the Service.

27. The Service, or at least the component or part that involved transmitting the Channels, was primarily designed and produced for circumventing the protections that Plaintiffs' DRM technology provide against unauthorized copying and had no commercially significant purpose or use other than circumventing such protections.

28. Defendants violated 17 U.S.C. § 1201(b)(1) by manufacturing, offering the public, providing, or otherwise trafficking in the Service. Each sale or provision of the Service constitutes a separate violation of 17 U.S.C. § 1201(b)(1).

29. Defendants' acts that violated 17 U.S.C. § 1201(b)(1) were performed without the authorization or consent of Plaintiffs or, on information and belief, any owner of the copyrighted works provided by Plaintiffs.

30. Defendants' violations of 17 U.S.C. § 1201(b)(1) were willful. Such violations damaged Plaintiffs in an amount to be proven at trial. Unless restrained and enjoined, Defendants will continue to violate 17 U.S.C. § 1201(b)(1).

## COUNT III

## Violations of the ECPA, 18 U.S.C. §§ 2511(1)(c)-(d), 2520(a)

31. Plaintiffs repeat and reallege the allegations in paragraphs 1-16.

32. The Channels transmitted on the Service are electronic communications that were intercepted from Plaintiffs to commit violations of the DMCA, ECPA, and other tortious acts.

33. Defendants intentionally disclosed and used the Channels through their provision of the Service, including by having the ability to activate and deactivate the Service subscriptions that they sold, knowing or having reason to know the Channels were obtained through interception.

Plaintiffs' Complaint

34. Defendants' acts that violated 18 U.S.C. §§ 2511(1)(c)-(d) and 2520(a) were performed for tortious and illegal purposes, or for commercial advantage or private financial gain.

35. Defendants' violations of 18 U.S.C. §§ 2511(1)(c)-(d) and 2520(a) were intentional. Such violations damaged Plaintiffs in an amount to be proven at trial. Unless restrained and enjoined, Defendants will continue to violate 18 U.S.C. §§ 2511(1)(c)-(d) and 2520(a).

## PRAYER FOR RELIEF

A. Defendants, and any officer, agent, servant, employee, or person acting in active concert or participation with them, should be permanently enjoined from:

    1. manufacturing, offering to the public, providing, or trafficking in the Service, or any other technology, product, service, device, component, or part thereof that is primarily designed or produced, marketed for, or that has only limited commercially significant purpose or use other than circumventing DRM technology or any other technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work;

    2. disclosing or using the Channels, or any other communication of Plaintiffs if Defendants know or have reason to know it was intercepted.

Such injunctive relief is authorized by 17 U.S.C. § 1203(b)(1) and 18 U.S.C. § 2520(b)(2).

B. Plaintiffs should be awarded the greater of (1) their actual damages together with Defendants' profits that are attributable to the violations identified in Count I and Count II, or (2) statutory damages of up to $2,500 for each violation identified in Count I or Count II, pursuant to 17 U.S.C. §§ 1203(c)(2) and (c)(3)(A);

C. Plaintiffs should be awarded the greater of (1) their actual damages together with Defendants' profits that are attributable to the violations identified in Count III, or (2) statutory damages of $100 for each day of violation, calculated based upon the number of days the Service was accessible through each sale or provision

of the Service, or $10,000 if the per day statutory damages are less than this amount, pursuant to 18 U.S.C. § 2520(c)(2);

     D.    Plaintiffs should be awarded punitive damages pursuant to 18 U.S.C. § 2520(b)(2);

     E.    Plaintiffs should be awarded their attorneys' fees and costs pursuant to 17 U.S.C. § 1203(b)(4)-(5) and 18 U.S.C. § 2520(b)(3);

     F.    Plaintiffs should be awarded pre-judgment and post-judgment interest on all damages, from the earliest date and at the maximum rate permitted by law;

     G.    Plaintiffs should be awarded any other relief the Court deems proper.

Dated: July 8, 2025

Respectfully submitted,

/s/ Timothy M. Frank
Timothy M. Frank (CA Bar No. 263245)
timothy.frank@hnbllc.com
Hagan Noll & Boyle LLC
820 Gessner, Suite 940
Houston, Texas 77024
Tel: (713) 343-0478

Attorney for Plaintiffs DISH Network L.L.C. and Sling TV L.L.C.